**UNITED FAMILY LIFE INSURANCE COMPANY, Petitioner,**

v.

**Allen E. BARROW, United States District Judge for the Northern District of Oklahoma, et al., Respondents.**

No. 71–1611.

United States Court of Appeals, Tenth Circuit.

Nov. 17, 1971.

V. P. Crowe, Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, Okl., Ellis Gable, Gable, Gotwals, Hays, Rubin & Fox, Tulsa, Okl., William H. Major, Heyman & Sizemore, Atlanta, Ga., for petitioner.

James L. Kincaid and Irvine E. Ungerman, Tulsa, Okl., for respondent.

Before HILL, SETH and BARRETT, Circuit Judges.

PER CURIAM.

The petitioner, United Family Life Insurance Co., the defendant in Case No. 71–C–85, brought this original action seeking a writ of mandamus or prohibition to have the United States District Judge disqualified to proceed further in the case. The petitioner had previously filed an affidavit of disqualification pursuant to 28 U.S.C. §§ 144 and 455, but the Judge, respondent herein, refused to step down. A formal order refusing to disqualify was entered.

Case 71–C–85 is a suit brought by Mrs. Linda Vance Mullendore against the petitioner insurance Company to collect upon three policies written on the life of her deceased husband. The policies total fifteen million dollars in face amount. The suit was filed on February 23, 1971, in a State Court, removed to the United States District Court for the Northern District of Oklahoma, May 7, 1971, and assigned to the respondent Judge Allen E. Barrow. Another suit had theretofore (June 1, 1970) been brought against the deceased by the First National Bank of Atlanta for $121,000.00 on a promissory note. This suit was assigned to Judge Barrow.

On April 2, 1971, the Northwestern Mutual Life Insurance, a first mortgagee, filed a suit for four million dollars, and to foreclose its mortgage on the Cross-Bell Ranches and against the deceased, and Mr. and Mrs. Eugene C. Mullendore II, the owners and mortgagors of the ranches.

This case, No. 71–C–128, was assigned to Judge Barrow. Also the Ponca City Production Credit Association, the second mortgage holder on the ranches was named a defendant and cross-claimed to foreclose its mortgage on the ranches and to foreclose its first mortgage on the livestock. The Production Credit Association in 71–C–128 also sought the appointment of a receiver for the property.

A hearing was set in No. 71–C–128 relative to the appointment of a receiver, but the day before the hearing, Eugene C. Mullendore II and his wife, the parents of the deceased E. C. Mullendore III, filed an action pursuant to Chapter XI of the Bankruptcy Act. Judge Barrow was also assigned to handle these proceedings. This is Case No. 71–B–400 and the debtors therein alleged that the secured creditors were owed about nine million dollars, the unsecured creditors about one-half million, and that the ranch is worth about nine million dollars. These debtors, the senior Mullendores, have entered into a contract with Mrs. Linda Vance Mullendore, the beneficiary of the life policies the subject of 71–C–85, whereunder the debts of the ranches will be paid from the proceeds of the policies after payment of the first five million thereof to the beneficiary. The proposed plan in the Chapter XI proceedings, contemplates that the proceeds of the policies, pursuant to this contract, be used to satisfy the mortgages, pay the creditors and be used to operate the ranches.

Judge Barrow held hearings in the four cases simultaneously on May 6, 1971. After argument and several con-

sultations with the parties, jointly and separately, he permitted the senior Mullendores, and the Chapter XI receivers to intervene in the suit against petitioner on the life policies (No. 71–C–85).

The petitioners herein urge that the cases are closely interrelated by reason of their purpose, and have become more closely connected through the contractual arrangement among some of the parties, and especially through the permitted interventions by the Chapter XI receivers and debtors in the suit on the policies. The petitioners also urge that the statutory function of Judge Barrow in the Chapter XI proceedings and the aims sought to be attained in such proceedings are inconsistent with the position Judge Barrow must take in handling the suit on the policies. The petitioners also assert that Judge Barrow should be disqualified by reason of bias and prejudice.

The record before us demonstrates how interconnected the cases have become, and especially the Chapter XI action and the suit on the life policies (71–C–85). This arises from the expected use in the proposed Chapter XI plan of the proceeds sought to be collected on the policies in the suit against petitioner. This appears to be the only proposed plan other than the sale of the ranch land and livestock with the resultant termination of the ranch enterprise. The Chapter XI proceedings have kept the debtors in possession, and Judge Barrow has commenced work on an attempt to keep the ranch business in operation and to readjust pursuant to Chapter XI of the Bankruptcy Act. This course does not under the limited facts before us showing the burden of the debt service, and the ranch earning capacity, have a realistic chance of success in the event there is no recovery on the life policies. The duties of Judge Barrow relative to the time factors, and especially to the possibility and advisability of delays in the Chapter XI proceedings are apparent.

The participation of the Chapter XI parties in the suit on the life policies through intervention, and before intervention by reason of their contractual arrangement with the beneficiary of the policies, places the Judge handling both cases in an inconsistent position. The preservation of the ranch enterprise under Chapter XI plan has become dependent upon a recovery on the policies. It does not appear that a judge under these circumstances can handle both cases. The panel on Multidistrict Litigation In Re Penn Central Securities Litigation, 322 F.Supp. 1021, and In Re Four Seasons Securities Laws Litigation, 328 F. Supp. 221, considered the relationship between Bankruptcy Proceedings, and separate actions against and by the debtor, and concluded that the judge in the Bankruptcy action should not hear the other suits. The same reasoning should here apply.

Relief is granted on the petition and it is directed that another judge be assigned to hear the suit against petitioner, No. 71–C–85. It is so ordered.